[Cite as *Turner v. Hooks*, 2016-Ohio-3083.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| Denelle M. Turner | : | |
| Petitioner, | : | Case No. 15CA3477 |
| v. | : | |
| Mark Hooks, Warden of Ross Correctional Institution, | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| Respondent. | : | |
| | : | RELEASED: 05/18/2016 |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Eric M. Hedrick, Assistant Ohio Public Defender, Columbus, Ohio, for petitioner.

Michael DeWine, Ohio Attorney General, and Stephanie L. Watson, Principal Assistant Ohio Attorney General, Columbus, Ohio, for respondent.

Hoover, J.

{¶1}   Denelle M. Turner filed a habeas corpus petition seeking his immediate release from the Ross Correctional Institution. In October 2010, a jury found Turner guilty of the murder of Robert Demons and felonious assault of Chiquita Pittman, both with a firearm specification. The trial court sentenced Turner to 15 years to life on the murder conviction, a consecutive term of three years for felonious assault, and an additional consecutive term of three years on the firearm specification. Turner appealed his convictions on the grounds that they were not supported by sufficient evidence and were against the manifest weight of the evidence. The Court of Appeals for the Tenth District affirmed the judgment. *State v. Turner*, 10th Dist. Franklin No. 10AP-1051, 2011-Ohio-3705.

{¶2}     In his petition, Turner claims he is entitled to the immediate release from prison because he was a delinquent minor at the time of the offenses and there were errors in the bindover proceedings such that the juvenile court retained exclusive jurisdiction over his case. Specifically, he argues: (1) the indictment was prematurely filed, (2) there were defects in the complaints, (3) the transfer of his felonious assault case was improper; and (4) the juvenile court failed to provide proper notice under R.C. 2152.12(G). To support his claim of failure to provide notice, Turner alleges that he had been adjudicated a dependent minor, removed from his mother's legal custody, and initially committed to the temporary legal custody of the Franklin County Children Services. After a year in the agency's temporary custody, he was placed in the legal custody of his maternal grandmother, Sylvia Watts. He claims that Watts did not receive notice of the juvenile proceedings, including the transfer hearing, and was not present at any of the proceedings. Turner argued that notice to his mother was insufficient because she was no longer his legal custodian.

{¶3}     Turner argues that because of the errors in the bindover proceedings, the general division of the court of common pleas was patently and unambiguously without jurisdiction to convict him; and he is entitled to habeas relief. The State filed a motion to dismiss pursuant to Civ.R. 12(B)(6) on the grounds that habeas corpus is not available to challenge the validity or sufficiency of an indictment and Turner had an adequate remedy on appeal.

{¶4}     We granted in part and denied in part the State's motion to dismiss and ordered the State to make a return of the writ with supporting evidence. *See Turner v. Hooks*, 4th Dist. Ross No. 15CA3477, Entry, May 14, 2015. We found that Turner's petition failed to state a claim for habeas corpus relief on his claims for (1) the premature filing of the indictment, (2) defects in the juvenile complaint, and (3) any purported violations of R.C. 2152.12(F)

concerning the improper transfer of his felonious assault case. However, we found that Turner's petition stated a potentially good cause of action in habeas as to his claim that the juvenile court failed to provide proper notice pursuant to R.C. 2152.12(G).

{¶5}    The State filed its return of writ with supporting exhibits; and Turner filed a response to the return of writ with additional supporting exhibits. This Court sua sponte appointed the Office of the Ohio Public Defender to represent Turner; and Turner, through his appointed counsel, filed an additional response that included exhibits, filed under seal, from the various juvenile court records establishing Watts as his legal custodian. The State filed a reply to Turner's response and included additional exhibits filed under seal. Following oral arguments, the State filed a supplemental exhibit. Thus, the parties' arguments and evidence have been submitted in accordance with Loc.R. 16(F); and Turner's claim can now be decided.

{¶6}    For the following reasons, Petitioner Denelle M. Turner's petition for a writ of habeas corpus is **GRANTED;** and Petitioner Denelle M. Turner is **DISCHARGED**.

I. Law and Analysis

A. Habeas Corpus is an Available Remedy

{¶7}    Habeas corpus petitions are governed by R.C. 2725.  In order to be entitled to a writ of habeas corpus, the petitioner must be able to establish that his present incarceration is illegal because the trial court that rendered the conviction lacked jurisdiction over the criminal case. R.C. 2725.05. Where the petitioner asserts that the trial court committed non-jurisdictional errors in the underlying case, the errors can be adequately reviewed in a direct appeal of the conviction and the habeas corpus petition should be dismissed. *State ex rel. Harsh v. Sheets*, 132 Ohio St.3d 198, 2012-Ohio-2368, 970 N.E.2d 926, ¶ 3; *State ex rel. Shackleford v. Moore*, 116 Ohio St.3d 310, 2007-Ohio-6462, 878 N.E.2d 1035, ¶ 5. A petitioner is only entitled to habeas

corpus if he can show he has no adequate remedy at law. *Agee v. Russell*, 92 Ohio St.3d 540, 544, 751 N.E.2d 1043 (2001). A narrow exception exists to the adequate-remedy-at-law element required for habeas relief: the situation in which the trial court patently and unambiguously lacked jurisdiction. *Smith v. Bradshaw*, 109 Ohio St.3d 50, 2006–Ohio–1829, 845 N.E.2d 516, ¶ 10; *State ex rel. Steele v. Robinson*, 4th Dist. Ross No. 12CA3359, 2013-Ohio-3541, ¶ 9. Thus, even if the petitioner could have raised the errors on appeal, the petitioner may nevertheless raise the claims by a petition for habeas corpus.

{¶8}    In *Gaskins v. Shiplevy*, 74 Ohio St.3d 149, 656 N.E.2d 1282 (1995), the Court held that a petitioner should have been permitted to amend his habeas corpus petition to include a claim of improper bindover from juvenile court because it stated a potentially good cause of action in habeas:

> In *State v. Wilson* (1995), 73 Ohio St.3d 40, 652 N.E.2d 196, we held that, without a proper bindover procedure under R.C. 2151.26, a juvenile court's jurisdiction is exclusive and cannot be waived. *Id.* at paragraphs one and two of the syllabus. Accordingly, we hold that appellant's amended petition stated a potentially good cause of action in habeas corpus, alleging, as it did, that the court of common pleas lacked jurisdiction over appellant because of improper bindover. Therefore, we reverse the judgment of the court of appeals and remand the cause for the court of appeals to allow the writ, require appellee to make a return, and determine whether the bindover was improper. *See Hammond v. Dallman* (1992), 63 Ohio St.3d 666, 668, 590 N.E.2d 744, 746, fn. 7.

*Id.* at 151; *see also State v. Wilson*, 73 Ohio St.3d 40, 44-46, 652 N.E.2d 196 (1995) (when a court lacks jurisdiction to convict a juvenile due to an improper bindover, the judgment of

conviction it enters is void ab initio). A habeas corpus petition in which petitioner challenges his conviction on that grounds that no proper bindover proceedings occurred states a potentially viable cause of action in habeas corpus, even though petitioner may have possessed an adequate remedy at law. *State ex rel. Harris v. Anderson*, 76 Ohio St.3d 193, 195, 667 N.E.2d 1 (1996). "Absent a proper bindover procedure * * *, the jurisdiction of a juvenile court is exclusive and cannot be waived." *Johnson v. Timmerman-Cooper*, 93 Ohio St.3d 614, 617, 757 N.E.2d 1153 (2001) (granting a writ of habeas corpus because the general division of the common pleas court patently and unambiguously lacked jurisdiction and the conviction rendered was void); *see also State v. Golphin*, 81 Ohio St.3d 543, 547, 692 N.E.2d 608 (1998) (the juvenile court's failure to comply with the mandatory provisions of the bindover statute resulted in a judgment of conviction in the general division that was void ab initio).

{¶9}     The State argues that Turner's petition is barred because he is challenging the constitutionality of R.C. 2152.12(G). Because a constitutional challenge must be made at trial or it is waived, the State claims that Turner waived any challenge to the constitutionality of R.C. 2152.12(G). To support this argument, the State cites the recent case, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900.

{¶10}  Turner's petition is distinguishable from *Quarterman* because Turner's petition does not challenge the constitutionality of a statute. Instead, he argues that the juvenile court failed to properly follow a statute; and the court's failure resulted in an improper bindover such that the adult court patently and unambiguously lacked subject matter jurisdiction.

{¶11}  In *Quarterman*, Quarterman challenged the constitutionality of the mandatory bindover statute on the grounds that the statute removed the trial court's discretion to decide if he had a capacity for rehabilitation. Quarterman argued that fundamental fairness demanded that he

have an opportunity to demonstrate his capacity for rehabilitation and the statute denied him that right because it made his bindover mandatory, removing the court's discretionary powers. The Court held that even though Quarterman failed to raise his constitutional challenge at the trial court level, the Court could still review his claim for "plain error" or "where the rights and interests involved may warrant it." *Quarterman* at ¶ 16, citing *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286 (1988) (an appellate court's invocation of the waiver doctrine is discretionary). The Court was prepared to address Quarterman's constitutional claim but found that he failed to make any assertion that the plain error doctrine applied to his case in his initial brief on the merits. *Id.* at ¶ 17-18. As a result, the Court "express[ed] no opinion regarding the constitutionality" of the challenged statute. *Id.* at ¶ 21. Because Turner's petition does not challenge the constitutionality of a statute, *Quarterman* is not applicable.

{¶12}  Turner is challenging the juvenile court's failure to provide proper notice under R.C. 2152.12(G). He argues that the lack of notice resulted in an improper bindover and violated his due process rights. Without a proper bindover, the general division lacked subject matter jurisdiction to convict him and the judgment of conviction against him was void ab initio. His petition states a viable cause of action in habeas corpus, even though he may have possessed an adequate remedy at law.  *State ex rel. Harris v. Anderson, supra.*

B. Turner's Bindover

{¶13}  Ohio has two types of procedures by which a juvenile court relinquishes jurisdiction and transfers a juvenile case, commonly referred to as a "bindover," to an adult court: a mandatory transfer established under R.C. 2152.10(A) and a discretionary transfer, established under R.C. 2152.10(B).  The procedures for transferring a mandatory case are set forth in R.C. 2152.12(A) and the procedures for transferring a discretionary case are set forth in

R.C. 2152.12(B). *See State v. Brown*, 2014-Ohio-314, 8 N.E.3d 345 (10th Dist.). Here, the State

moved for a mandatory transfer under R.C. 2152.10(A) and R.C. 2152.12(A) on juvenile

complaint no. 08JU0811236 (intentional murder).

{¶14} Turner's acts, committed when he was 17 years old, involved felonious assault

and murder, both with a firearm specification. The State filed two complaints. The first

complaint filed, complaint no. 08JU0810743, contained two counts, each alleging a second

degree felonious assault offense in violation of R.C. 2903.11(A)(2) ("[n]o person shall

knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly

weapon or dangerous ordnance") for acts that allegedly took place in August 2008 involving two

victims, Robert Demons and Chiquita Pittman.

{¶15} Demons died shortly afterwards; and the State filed a second complaint,

complaint no. 08JU0811236, alleging the murder of Demons in violation of R.C. 2903.02(A)

with the use of a firearm. The second complaint did not contain a separate count for felonious

assault involving the Pittman victim. In response to the State's motion to transfer juvenile

complaint no. 08JU0811236, the juvenile court held a hearing on November 14 and November

17, 2008, and found that Turner was 17 years old at the time the acts charged in the second

complaint occurred and that there was probable cause to believe Turner committed the act of

murder, which constituted a category one offense. It further found that there was probable cause

that Turner had a firearm and used it to facilitate the murder. On November 17, 2008, the

juvenile court ordered the case transferred to the general division of the Common Pleas Court of

Franklin County.

{¶16} A judgment entry dated December 17, 2008 restates the juvenile court's transfer

order of November 17, 2008. The judgment entry also states that there were two hearing dates,

November 14 and November 17, and that Turner's mother was present for both hearings and Turner's father was present for the November 14 hearing. It further states, "Denelle Turner, his parents, and his defense attorney were served and acknowledge receipt of a copy of the Motion to Relinquish Jurisdiction and notice of today's hearing."

{¶17}   In October 2010, a jury found Turner guilty on count two of the murder of Demons in violation R.C. 2903.02(B) and count three of the felonious assault of Pittman in violation of R.C. 2903.11, each with a firearm specification.  The jury found Turner not guilty of count one, the intentional murder charge, and not guilty of count four, tampering with evidence. The trial court sentenced Turner to 15 years to life for murder, three years for felonious assault, and three years on the firearm specification. He received jail time credit of 792 days, or approximately two years and two months. He was imprisoned on October 14, 2010. Therefore, he has already served his three-year term of imprisonment for the firearm specification and his three-year-term of imprisonment for the felonious assault conviction and is currently serving his 15 years-to-life prison term for his murder conviction.

### C. Failure to Provide Notice Under R.C. 2152.12(G)

{¶18}   Turner argues that the juvenile court did not follow the proper transfer procedures in R.C. 2152.12(G) because it did not give notice to his legal custodian, Sylvia Watts, who he states was awarded legal custody of him by the juvenile court in 2005.

{¶19}   The procedures set forth in R.C. 2152.12 apply to Turner's transfer.  The State filed a motion to have Turner's case transferred pursuant to R.C. 2152.12(A). The juvenile court held a hearing that spanned a two-day time period of November 14 and 17, 2008. R.C. 2152.12(G) requires notice in writing of the transfer hearing:

(G) The court shall give notice in writing of the time, place, and purpose of any

hearing held pursuant to division (A) or (B) of this section *to the child's parents,*

*guardian, or other custodian* and to the child's counsel at least three days prior to

the hearing.

(Emphasis added.)

{¶20}   The notice provision in R.C. 2152.12(G) states that notice "shall" be given.

Therefore, notice of the hearing is mandatory. *Golphin*, *supra*, at 545-546 ("the term 'shall' in a

statute or rule connotes the imposition of a mandatory obligation * * *"). "[A] statute or rule

which uses the word 'shall' in describing an act which is to be performed is not generally

susceptible of a 'substantial compliance' standard of interpretation." *Id*. at 546.

{¶21}   The notice provision in R.C. 2152.12(G) is also a constitutional due process

requirement. *In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (due process

requires that "the child and his parents or guardian be notified, in writing, of the specific charge

or factual allegations to be considered at the hearing, and that such written notice be given at the

earliest practicable time, and in any event sufficiently in advance of the hearing to permit

preparation"); *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 15 ("a

juvenile court must recognize a juvenile's due process rights"). The importance of parental or

guardian involvement has been recognized by the courts as a vital part of the fundamental

fairness of juvenile proceedings:

In rendering our decision, we reinforce the vital role a parent can play in a

delinquency proceeding.

"The law's concept of the family rests on the presumption that parents possess

what a child lacks in maturity, experience, and capacity for judgment required for

making life's difficult decisions." *Parham v. J.R.* (1979), 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101. *Gault* itself presented such a scenario, with a mother who was engaged fully in securing her child's best interests and whom the court recognized could help her son determine whether to waive his rights. *See* 387 U.S. at 42, 87 S.Ct. 1428, 18 L.Ed.2d 527. The value of the parent in such decision-making remains today in Ohio's juvenile courts, as juveniles decide whether to waive their right to counsel.

*In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 102-103; *State v. Taylor*, 26 Ohio App.3d 69, 498 N.E.2d 211 (3d Dist.1985), syllabus (notice of the bindover hearing to a legal custodian "is mandatory and cannot be waived by the juvenile by his failure to object to non-compliance" and holding that notice to child's adult sister with whom he resided failed to adhere to the due process requirements and thus adult court was without jurisdiction).

{¶22} The presumption that parents possess maturity, experience, and capacity for judgment to protect their child's best interest is not absolute. "As with so many other legal presumptions, experience and reality may rebut what the law accepts as a starting point; the incidence of child neglect and abuse cases attests to this." *Parham v. J. R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). Not every parent is "engaged fully in securing her child's best interests" and some neglect or abuse their child, or create such a condition or environment that the State must become involved to protect the child's best interests.

{¶23} A child "[w]hose condition or environment is such as to warrant the [S]tate, in the interests of the child, in assuming the child's guardianship" is adjudicated "dependent" and the court may award legal custody to another person. R.C. 2151.04(C). The award of legal custody is

governed by R.C. 2151.353(A)(3) and "is intended to be permanent in nature." R.C. 2151.42(B).

"Legal custody" is defined as:

> [A] legal status that vests in the custodian the right to have physical care and
> control of the child and to determine where and with whom the child shall live,
> and the right and duty to protect, train, and discipline the child and to provide the
> child with food, shelter, education, and medical care, all subject to any residual
> parental rights, privileges, and responsibilities. An individual granted legal
> custody shall exercise the rights and responsibilities personally unless otherwise
> authorized by any section of the Revised Code or by the court.

R.C. 2151.011(B)(21).

{¶24} The crux of this case is whether the juvenile court complied with the notice provision of R.C. 2152.12(G), which requires notice "to the child's parents, guardian, or other custodian," when it provided notice to Turner's biological mother, but not to his legal custodian appointed under R.C. 2151.353(A)(3) following Turner's dependency adjudication under R.C. 2151.04(C).

{¶25} The record shows that Turner was adjudicated dependent and removed from his biological mother's legal custody in 2004 because the juvenile court found that "continued placement in [her] home is contrary to the welfare and best interest" of Turner. (Turner Exhibits B, C, & D). Turner was placed in the temporary custody of Franklin County Children Services. According to the case plan, Turner's mother alleged that Derrick Wilford was Turner's father. (Turner Exhibit A). Attempts were to be made to locate Wilford, establish paternity, and determine his ability to care for Turner, but nothing in the record indicates that Wilford was

located or paternity established. For purposes of our analysis of R.C. 2152.12(G), Wilford is not presumed to be Turner's parent, guardian or other custodian. *See* R.C. 3111.03.

{¶26} In July 2005, after Turner had been in the temporary custody of Franklin County Children Services for nearly a year, the agency filed a motion seeking an extension of its temporary custody of Turner because Turner's mother failed to complete any of the case plan objectives and another relative expressed interest in obtaining custody. Specifically, the motion alleged that since Turner had been removed from his mother's custody:

[M]other has failed to complete any of the case plan objectives. Mother has failed

to complete a drug and alcohol assessment and parenting classes. Mother has

failed to drop urine, and has a pattern of disappearing for a month at a time, and

then re-appearing requesting that referrals be made. Mother is very inconsistent

with her supervised visitation. Mother often does not show or shows late.

Recently mother's visits have been terminated because of the inconsistences.

(Turner Exhibit F). Additional information in the record shows that Turner's mother submitted to one random urine screen, which tested positive for crack, while Turner was in the agency's custody. (Turner Exhibit K).

{¶27} Shortly after the agency filed its motion, Turner's grandmother, Sylvia Watts, filed a motion requesting legal custody of Turner. In support of her motion, Watts alleged that Turner's mother is "never there, she's on drugs, she's not keeping her visits * * *." Watts stated that Turner wanted to reside with her and that she had also taken care of another of Turner's sibling, now an adult, since the time the sibling was 11 years old.

{¶28} A custody hearing was held in October 2005 and a magistrate's decision was issued that terminated the temporary custody of Franklin County Children Services and awarded

Watts legal custody pursuant to R.C. 2151.353(A)(3). It further ordered that legal custody was intended to be permanent in nature in accordance with R.C. 2151.42(B).  Under R.C. 2151.42(B):

> An order of disposition issued under division (A)(3) of section 2151.353, * * * granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

{¶29}  The juvenile court adopted the magistrate's decision and entered it as a matter of record as the juvenile court's judgment, finding no error of law or other defect on the face of the magistrate's decision. (Turner Exhibit J). The record shows no objections to the magistrate's decision, no appeal of the trial court's order, and no subsequent modification or termination of the order.

{¶30}  Watts was Turner's legal custodian at the time of the bindover proceedings in 2008 and had the court-ordered "right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care * * *" subject only to Turner's biological mother's residual parenting rights. *See* R.C. 2151.011(B)(49) (" 'Residual parental rights, privileges, and responsibilities' means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the

privilege to determine the child's religious affiliation, and the responsibility for support.") The statute governing residual parental rights "is narrowly written and does not, by its terms, invite an expansive interpretation." *In re T.K.*, 2014-Ohio-576, 8 N.E.3d 415, ¶ 23 (9th Dist.).

{¶31} Turner's dependency adjudication and the subsequent award of legal custody to Watts meant that Turner's mother was implicitly found unsuitable to parent Turner. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, paragraph two of the syllabus; *see also id.* at ¶ 23 ("A juvenile court adjudication of abuse, neglect, or dependency * * * implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents."); *In re Johnson*, 4th Dist. Ross No. 94CA2003, 1995 WL 146064, *4 (Mar. 29, 1995) ("We agree that the R.C. Chapter 2151 statutory scheme in neglect and dependency cases incorporates the concept that only unsuitable parents should be deprived of their children."). "[A] juvenile court adjudication of abuse, dependency, or neglect is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." (Quotations omitted.) *In re S.N.T.*, 4th Dist. Washington No. 12CA2, 2012-Ohio-3266, ¶ 14.

{¶32} There is nothing in the record that shows that Watts received any notices from the juvenile court or the State of any of the 2008 juvenile proceedings that resulted in Turner's bindover to the general division. The parties agree that Watts did not receive a court notice of the bindover hearing in accordance with R.C. 2152.12(G) and did not attend it. Instead, the juvenile court records show that Turner's mother was listed in the section "mother, guardian or custodian" on the complaint filed by the State. (Warden Ex 1). The juvenile court also provided Turner's mother with notice of the bindover hearing, she signed acknowledging receipt of the

notice, she attended the bindover hearing, and represented to the court that she was Turner's

mother. She was not placed under oath and gave no sworn testimony. (Warden Ex. 3, 7, 8).

{¶33} Turner argues that the court's failure to give notice to his legal custodian and her

lack of presence with him at the hearing violated the notice provision of R.C. 2152.12(G) that

requires that notice be given to his "parents, guardian, or other custodian." He argues that notice

to his biological mother, whose legal custody was stripped away by the juvenile court because

she was unsuitable to parent him, did not satisfy the notice requirements of R.C. 2152.12(G). As

a result, the juvenile court's transfer order was improper and the adult court was without subject

matter jurisdiction.

{¶34} The State argues the statute only requires that notice be given to either Turner's

parents, Turner's guardian, or Turner's other custodian and that notice to Turner's biological

mother meets the "parents" category and satisfies the statutory notice requirement. The State

argues that the legislative intent behind the notice provision is to protect the child by making sure

that one of the child's "caregivers" be there to offer assistance, guidance, and support to him and

this intention was satisfied by notice to his biological mother, regardless of her legal relationship

to him.

{¶35} In construing a statute, a court's paramount concern is the legislature's intent in

enacting it. *See, e.g., State ex rel. Cincinnati Enquirer v. Jones–Kelley*, 118 Ohio St.3d 81, 2008-

Ohio-1770, 886 N.E.2d 206, ¶ 17; *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-

Ohio-5858, 856 N.E.2d 966, ¶ 11. " 'The court must look to the statute itself to determine

legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted,

constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible,

be accorded to every word, phrase, sentence and part of an act * * *.' " *State ex rel. McGraw v.*

*Gorman*, 17 Ohio St.3d 147, 149, 478 N.E.2d 770 (1985), quoting *Wachendorf v. Shaver*, 149

Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus. To determine legislative

intent, a court must " 'read words and phrases in context and construe them in accordance with

rules of grammar and common usage.' " *Jones-Kelley* at ¶ 17, quoting *Thornton* at ¶ 11. "In

construing the terms of a particular statute, words must be given their usual, normal, and/or

customary meanings." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873

N.E.2d 872, ¶ 12.

{¶36}   When the language of a statute is plain and unambiguous and conveys a clear and

definite meaning, there is no need to apply rules of statutory construction. *Id.*; *see also Cline v.*

*Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991); *Sears v. Weimer*, 143

Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. However, when a statute is

subject to various interpretations, a court may invoke rules of statutory construction to arrive at

legislative intent. R.C. 1.49; *Cline, supra; Carter v. Youngstown,* 146 Ohio St. 203, 65 N.E.2d 63

(1946), paragraph one of the syllabus.

{¶37}   The relevant portion of R.C. 2152.12(G) requires that notice be given "to the

child's parents, guardian, or other custodian * * *." None of the three terms used in the phrase

are defined in R.C. 2152.02, the definition section for the chapter. The term "parents" is

undefined in the Revised Code and is given its ordinary meaning. Black's Law Dictionary, 7th

Edition 1999, defines "parent" as:

>     The lawful father or mother of someone. In ordinary usage, the term denotes more
>
>     than responsibility for conception and birth. The term commonly includes (1)
>
>     either the natural father or the natural mother of a child, (2) the adoptive father or
>
>     the adoptive mother of a child, (3) the child's putative blood parent who has

expressly acknowledged paternity, and (4) any individual or agency whose status

as guardian has been established by judicial decree. In law, parental status based

on any criterion may be terminated by judicial decree.

{¶38} The term "parents" has several different meanings and is not limited to only a

child's "lawful" biological father and mother – it can also include an individual or agency with

judicially decreed guardian status. Because the term "parents" as used in the statute is subject to

various interpretations, we invoke the rules of statutory construction to arrive at legislative

intent.

{¶39} One appellate court has already examined the term "parents" as used in R.C.

2152.12(G) and held that a strictly literal interpretation of the term in its plural form would

violate the cardinal rule that a statute should not be interpreted to yield an absurd result:

R.C. 2152.12(G) does not define "parents," and does not indicate whether both

parents are required to constitute sufficient notice and satisfy due process.

Although a literal reading of "parents" would seem to require notice to both

parents, we find that such a reading would render the use of the term illogical

under some circumstances such as where only one parent is living or the identity

of one parent is unknown. Under such hypothetical circumstances, clearly notice

to a single parent would be sufficient. *See Johnson v. Allonas* (1996), 116 Ohio

App.3d 447, 450-451 (hypothetical situation demonstrates absurd results of

statute interpretation). It is a cardinal rule of statutory construction that a statute

should not be interpreted to yield an absurd result. *Mishr v. Poland Bd. of Zoning*

*Appeals* (1996), 76 Ohio St.3d 238, 240. Further, that the statute states that notice

"shall" be given to the "parents," yet fails to indicate the proper procedure when

notice to one parent is an impossibility, demonstrates that "parents" should not be

strictly interpreted to mean both parents. We also note that Juv.R. 2(Y)

acknowledges that there are circumstances under which only one parent may be

involved in a juvenile proceeding. Juv.R. 2(Y) defines a "party" as a child who is

the subject of a juvenile court proceeding, the child's spouse, if any, the child's

"parent or parents," and various other persons. Thus, Juv.R. 2(Y) contemplates

that both parents need not necessarily be a party to the action.

We find this interpretation consistent with legislative intent. Principles of

statutory construction require that courts interpret statutes to reflect a consistent

legislative intent. *Akron v. Meissner* (1993), 92 Ohio App.3d 1, 6. R.C.

2152.12(G) certainly reflects a legislative intent to protect juveniles by informing

their caregivers of any pending actions involving the juveniles so that the

caregivers can offer assistance, guidance, and support to the juveniles. *See State v.*

*Taylor* (1985), 26 Ohio App.3d 69, 71 (the purpose of the notice requirements in

former R.C. 2151.26[D], which is identical to R.C. 2152.12[G], is to protect the

juvenile). Although it is better to give notice to both parents when possible, notice

to one parent when the other's identity or whereabouts are unknown still serves to

protect the juvenile and furthers the legislative goals of R.C. 2152 .12(G).

*State v. Reynolds,* 10th Dist. Franklin No. 06AP-915, 2007-Ohio-4178, ¶¶ 11-12; *see also State*

*v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285 (4th Dist.) (not requiring notice

to both parents, but finding that notice to one of the child's two lawful parents was a "procedural

irregularity").

{¶40} We find that interpreting the term "parents" to mean the biological mother without considering the biological mother's legal relationship to the child also leads to absurd results. Hypothetically, it would permit the due process requirements of the notice provision to be satisfied by notice to a biological mother even though the child has been adopted and has an adoptive mother as the lawful parent.  Thus we reject the State's argument that the term "parents" means the biological mother regardless of the biological mother's legal relationship to the child.

{¶41} We also find that the meaning of term "parents" must be read in context with the other two terms in the phrase, "parents, guardian or other custodian" under the legal maxim "ejusdem generis." *See State v. Hooper*, 57 Ohio St.2d 87, 89-90, 386 N.E.2d 1348 (1979) (using the doctrine of ejusdem generis to construe the phrase "any instrument, apparatus or other object"); *State v. Aspell*, 10 Ohio St.2d 1, 4, 225 N.E.2d 226 (1967).  The doctrine of ejusdem generis was explained in *Aspell*:

> Under the rule of ejusdem generis, where in a statute terms are first used which are
>
> confined to a particular class of objects having well-known and definite features and
>
> characteristics, and then afterwards a term having perhaps a broader signification is
>
> conjoined, such latter term is, as indicative of legislative intent, to be considered as
>
> embracing only things of a similar character as those comprehended by the preceding
>
> limited and confined terms.

*Id*. at paragraph two of the syllabus. The doctrine of ejusdem generis also applies in reverse order. *See State ex rel. Barno v. Crestwood Bd. of Edn.*, 134 Ohio App.3d 494, 505, 731 N.E.2d 701 (11th Dist.1998) ("The doctrine is equally applicable to the opposite sequence, where general words are followed by a list of specific ones. 2A Sutherland, Statutes and Statutory

Construction (5 Ed. 1992) 188, Section 47.17"). Thus, under ejusdem generis "parents,"

"guardian," and "other custodian" all must share similar characteristics.

{¶42}  In *Hooper*, the Court used ejusdem generis to construe the phrase "any

instrument, apparatus or other object." It found that the statute listed three nouns, two which

were specific, "instrument" and "apparatus," and one that was general, "object." The court found

that the general term "object" was immediately preceded by the word "other" – "a word which

refers to the two specific nouns in the list and suggests legislative intent to limit the scope of the

general noun to those objects having the characteristics of the specific nouns." *Id.* at 89.

Therefore, the term "object" had to have the same characteristics as an "instrument" and an

"apparatus."  Those more specific nouns had a common characteristic of being inanimate. Thus,

all three terms had to share the common characteristic of being inanimate.

{¶43}  Here, the phrase "parent, guardian, or other custodian" is also linked by the word

"other" and likewise suggests a legislative intent to limit the scope of a general noun to those

having the characteristics of the specific nouns.

{¶44}  R.C. 2151.011(B) provides definitions for terms used in Chapter 2151 and lends

guidance concerning the characteristics of the nouns "guardian" and "custodian."

> (18) "Guardian" means a person, association, or corporation that is granted
> authority by a probate court pursuant to Chapter 2111. of the Revised Code to
> exercise parental rights over a child to the extent provided in the court's order and
> subject to the residual parental rights of the child's parents.
>
> (12) "Custodian" means a person who has legal custody of a child or a public
> children services agency or private child placing agency that has permanent,
> temporary, or legal custody of a child.

"Legal custody" is used in the definition of "custodian" and is defined in R.C. 2151.011 as:

> (21) "Legal custody" means a legal status that vests in the custodian the right to
> have physical care and control of the child and to determine where and with
> whom the child shall live, and the right and duty to protect, train, and discipline
> the child and to provide the child with food, shelter, education, and medical care,
> all subject to any residual parental rights, privileges, and responsibilities. An
> individual granted legal custody shall exercise the rights and responsibilities
> personally unless otherwise authorized by any section of the Revised Code or by
> the court.

{¶45} Based upon the definitions, "guardian" and "custodian" share the common characteristic of having legal authority for the child. A "custodian" has "legal custody" and has the legally vested "right and duty to protect, train, and discipline" the child and make important decisions concerning the child's education and medical care. By pairing the noun "parent" with the terms "guardian" and "other custodian," the legislature intended for the term "parent" to have the same characteristics of a "guardian" and "custodian." A "parent" for purposes of R.C. 2152.12(G) must be a custodian – a person who has legal custody, one with the legal right and duty to protect, train, and discipline the child and make important decisions concerning educational and medical services.

{¶46} The legislative intent behind R.C. 2152.12(G) also supports an interpretation of "parent" that requires more than a biological relationship. R.C. 2152.12(G) "certainly reflects a legislative intent to protect juveniles by informing their caregivers of any pending actions involving the juveniles so that the caregivers can offer assistance, guidance and support to the

juveniles." *State v. Reynolds*, *supra*, at ¶12.  A biological mother whose child is adjudicated "dependent" is implicitly unsuitable to parent. *In re C.R., supra*. Therefore, we conclude that the legislature did not intend the term "parents" to include a biological mother who has lost all but residual parenting rights and has been implicitly declared an unsuitable parent through a neglect or dependency adjudication.

{¶47}  In this case, Sylvia Watts was awarded legal custody of Turner and became his custodian with the legal right and duty to protect him. Turner's mother was implicitly adjudicated unsuitable as parent and did not have legal custody. Turner's biological mother was not a "caregiver" that could offer assistance, guidance or support to him during a "critically important" bindover hearing. *Kent v. United States*, 383 U.S. 541, 556, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (the transfer of a juvenile to criminal court is a "critically important action determining vitally important statutory rights of the juvenile" and "must measure up to the essentials of due process and fair treatment"). Thus, we find that Turner's biological mother was not his "parent" for purposes of notice under R.C. 2152.12(G).

{¶48}  The State argues that even if Turner's biological mother was not his "parent," she satisfied the definition of "custodian" because Turner and his mother allegedly lived at the same address and therefore she must have had "physical" custody of Turner. To bolster this argument, the State filed a supplemental exhibit after oral arguments in which Turner stipulated he resided at 816 Greenfield Drive. The Supreme Court of Ohio has long ago rejected the "physical possession" concept of custody for children and held that custody "mean[s] a custody created by operation of law or awarded by judicial order, judgment, or decree." *Rarey v. Schmidt*, 115 Ohio St. 518, 522-523, 154 N.E. 914 (1926). "Any other interpretation would create an intolerable situation, where any person who might have the physical possession and control of a minor child

could appear in court in the place and stead of a parent, guardian, or legal custodian * * *." *Id.* at 523. Thus we reject the State's "physical possession" definition of custody for purposes of the notice requirement in R.C. 2152.12(G).

{¶49} The State also argues that because Watts was awarded "legal custody" under R.C. 2151.353(A)(3), not "permanent custody" under R.C. 2151.353(A)(4), she was not a custodian under R.C. 2152.12(G). However, we find that the phrase "parents, guardian, or other custodian" includes persons with legal custody pursuant to R.C. 2151.353(A)(3). The term "custodian" is not limited to one having "permanent custody." It includes persons with "legal custody" and agencies with "permanent, temporary, or legal custody of a child." *See* R.C. 2151.011(B)(12). Watts's status as legal custodian gives her the right to receive notice under R.C. 2152.12(G).

{¶50} Finally, the State argues that Watts was not the legal custodian because she did not sign a "statement of understanding" at the custody hearing. *See* R.C. 2151.353(A)(3)(a)-(d). First, this argument has little relevance because any purported errors in or objections to the custody proceeding should have been raised in the juvenile court in 2005. The court's order of October 11, 2005 granted her legal custody. Second, the "statement of understanding" provision was a legislative amendment effective September 21, 2006. Because Sylvia Watts filed her motion and was awarded legal custody in 2005, that provision was not part of the law and is not applicable. *See generally* 3 Angela G. Carlin, Baldwin's Ohio Practice Merrick Rippner Probate Law, Section 109:79 (2014).

{¶51} We find that the juvenile court failed to follow the notice requirements of R.C. 2152.12(G) requiring notice "to the child's parents, guardian, or other custodian." The court only provided notice to Turner's biological mother, who had been implicitly found to be an unsuitable parent in a prior dependency proceeding. The court did not provide notice to Turner's legal

custodian. There is no evidence in the record that Watts had actual notice as she was not in

attendance during any part of the hearing. Turner was prejudiced by the juvenile court's failure

to give notice because he did not have Watts at the hearing to offer him assistance, guidance or

support. Turner was denied his statutory right to have notice given to his "parents, guardian, or

other custody" and his bindover proceeding was improper. Unless Turner's claims are barred by

waiver, invited error, or estoppel by stipulation, the adult court lacked subject matter jurisdiction

and his conviction is void ab initio.

### D. Waiver and Invited Error

{¶52} "The issue of a court's subject matter jurisdiction cannot be waived. A party's

failure to challenge a court's subject matter jurisdiction cannot be used, in effect, to bestow

jurisdiction on a court where there is none." *State v. Wilson*, 73 Ohio St.3d 40, 46, 652 N.E.2d

196 (1995). The doctrine of invited error is a branch of the waiver doctrine and is also

inapplicable to an attack on the subject matter jurisdiction of the court. *State ex rel. Kline v.

Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27 ("challenging improper

assignment and transfer of a case is an attack on the subject-matter jurisdiction of the transferee

court; hence, the doctrines of invited error and waiver do not apply"); *Davis v. Wolfe*, 92 Ohio

St.3d 549, 552, 751 N.E.2d 1051(2001) (invited error doctrine was branch of waiver doctrine and

did not preclude a habeas corpus petitioner from asserting the court lacked jurisdiction over

him).

{¶53} Turner's claim that the adult court lacked subject matter jurisdiction over him

cannot be waived or barred by the invited error doctrine. The State claims that Turner invited the

error when he did not object: (1) when the State listed his biological mother on the complaint; (2)

when the court sent his biological mother a waiver of service of summons and notice of hearing

and she signed acknowledging receipt; (3) when the juvenile court sent the bindover hearing notice to his biological mother and she signed that she received it; and (4) to his biological mother's presence in the courtroom or her unsworn statements that she was his mother.

{¶54} First, under the the invited error doctrine, "a party is not permitted to take advantage of an error that he himself invited or induced the court to make." *Davis* at 552. The enumerated list identifies actions taken by the juvenile court or the State, not actions Turner took or induced the court to take. Second, even if Turner's failure to object constitutes "invited error," it does not preclude him from asserting that the adult court lacked subject matter jurisdiction. Therefore, we reject the State's argument that Turner's petition is barred by the waiver or invited error doctrines.

### E. Estoppel by Stipulation to Facts Which Confer Jurisdiction

{¶55} "Although adverse parties may not confer jurisdiction upon a court by mutual consent, where none would otherwise exist, they may stipulate the truth of facts that are sufficient to confer jurisdiction." *Beatrice Foods Co. v. Porterfield*, 30 Ohio St.2d 50, 282 N.E.2d 355 (1972), paragraph two of the syllabus; *In re Palmer*, 12 Ohio St.3d 194, 196, 465 N.E.2d 1312 (1984) ("In questions of subject-matter jurisdiction a theory of waiver cannot be invoked even where the jurisdictional issue was not raised in a timely fashion. Stipulation to the truth of facts necessary to insure jurisdiction, however, may suffice to confer jurisdiction through estoppel."(Citations omitted.)). "A stipulation is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point." *Thompson v Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, 965 N.E.2d 377, ¶ 69 (10th Dist.). Although parties may stipulate to facts, they may not stipulate to what the law requires. *Jeffers v. Bd. of Athens Cty. Commrs.*, 4th Dist. Athens No. 06CA39, 2007-Ohio-2458, ¶ 15. Consequently, a stipulation to a

question of law does not bind courts. *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18 (finding that "this court is not bound by the parties' stipulation on [a] legal issue").

{¶56}   If Turner stipulated to the fact that his biological mother was his legal guardian or legal custodian or stipulated that his mother was his "parents, guardian, or other custodian for purposes of notice under R.C. 2152.12(G)," then the stipulation would be sufficient to confer jurisdiction. *See State v. Parks*, 51 Ohio App.3d 194, 555 N.E.2d 671 (2nd Dist.1988) (Notice requirements in the bindover statute are satisfied when court gives notice to the child's "custodian." Juvenile court does not err when it gives notice to child's grandmother where police officer gave sworn testimony concerning the guardianship of grandmother even though documentation for the guardianship was not provided); *State v. Wallace*, 9th Dist. Lorain No. 91CA005075, 1992 WL 112559, *3 (May 20, 1992) (juvenile court had notice that grandmother was legal guardian, grandmother gave sworn testimony at the amenability hearing and held herself out as guardian throughout the proceedings).

{¶57}   The State argues, "Turner's counseled stipulation that proper R.C. 2152.12(G) notice was executed has judicially estopped him from his current assertions." The State claims that Turner stipulated at the August 2008 hearing that notice of the bindover hearing was properly given to his mother. The State claims this stipulation is reflected in subsequent court entries. (State Ex. 2, 3 & 5).

{¶58}   Turner argues that there is no such stipulation in the record. He states that at the initial date of the bindover hearing in August 2008, there was a stipulation as to the service of the State's motion to relinquish jurisdiction. (Exhibit 5, p 2-3). However, he argues that he never stipulated that his mother was properly served with the hearing notice.

{¶59} A stipulation that the court's notice meets the statutory requirements of R.C. 2152.12(G) is a stipulation of law. The issue here is whether the parties stipulated that Turner's biological mother was his "parent, guardian or other custodian" for purposes of notice under R.C. 2152.12(G).

{¶60} Our review of the record reveals no factual stipulation by the parties that Turner's biological mother was his legal custodian or guardian and no legal stipulation that the court gave proper notice in accordance with R.C. 2152.12(G). At the August 2008 hearing, Turner's counsel stipulated that he and Turner were served with the State's motion to relinquish jurisdiction. However, it is not clear from the transcript that he stipulated that Turner's mother was served with the motion to relinquish jurisdiction. The prosecutor stated that the motion had not yet been served on her, "Those were served upon Mr. Parker and Denelle yesterday at the preliminary hearing; however, we're serving it on mom today." The judge then asks Turner's counsel, "So you're stipulating as to both things, service and the date of birth?" and Turner's counsel states affirmatively, "Service and the birth date, yes, Your Honor." Based on the transcript, it appears that Turner and his counsel both were served with the State's motion to relinquish jurisdiction and that his counsel stipulated to receiving it. It is not clear that counsel's stipulation encompassed the mother's receipt of the motion as it appears that it had not yet been served on her at the time the stipulations were made. (Warden Ex. 5, p. 3, lines 10-20). Regardless, this stipulation involved the State's motion, not the court's hearing notice.

{¶61} Likewise, at the November 14 and 17 hearing, the State presented stipulations to the court concerning the facts set forth in the coroner's report, crime lab reports, and various other exhibits and maps. (Warden Ex. 7, p 4-9). The prosecutor stated, "I believe we've certainly gone over before the fact that Denelle and his mother and his attorney have all been

served with the Motion to Relinquish Jurisdiction. As I read earlier, the stipulation to age is there

* * *." (Ex 7, p 9). There was no stipulation concerning the hearing notice.

{¶62}   Based on our review of the record, the only stipulation Turner arguably made was that his mother received the State's motion to relinquish jurisdiction.  There is no stipulation that that his mother was his "parent, guardian or other custodian" for purposes of notice under R.C. 2152.12(G). Without a clear factual stipulation, we decline to apply the principle of estoppel to confer jurisdiction here.

## II. Conclusion

{¶63}   Turner's petition of habeas corpus states a valid claim under R.C. 2725.06. The juvenile court failed to provide notice to Turner's "parents, guardian, or other custodian" pursuant to R.C. 2152.12(G). As a result, the bindover proceeding was improper and the general division of the common pleas court patently and unambiguously lacked jurisdiction. The court's judgment of conviction is void ab initio.

{¶64}   We find that Denelle M. Turner is unlawfully imprisoned or detained by Mark Hooks, Warden, Ross Correctional Institution, Chillicothe, Ohio, and he is forthwith **DISCHARGED** from confinement pursuant to R.C. 2725.17. Pursuant to R.C. 2725.28, costs are taxed to the State.

**PETITION GRANTED. PETITIONER DISCHARGED.**

**COSTS TO RESPONDENT. IT IS SO ORDERED.**

Harsha, J.: Concurs in Judgment and Opinion.
Abele, J.: Dissents with Dissenting Opinion.

                                                    FOR THE COURT

                                                    _____
                                                    Marie Hoover, Judge

Abele, J. Dissenting:

{¶ 65}  I respectfully dissent. Because the juvenile court adequately and substantially

complied with the applicable statutory notice provision prior to conducting the mandatory

bindover proceeding, I believe that the petition should be dismissed.

{¶ 66}  In October 2010, as the principal opinion points out, a Franklin County Common

Pleas Court jury found the Petitioner, Denelle Turner, guilty of murder and felonious assault.

The court sentenced the then seventeen-year-old Turner to serve twenty-one years to life in

prison. The appellate court affirmed Turner's convictions. See *State v. Turner*, 10th Dist. App.

No. 10-AP-1051, 2011-Ohio-3705.

{¶ 67}  Prior to his trial in the general division of the common pleas court, Turner

appeared in the juvenile court, with the assistance of legal counsel and his mother, Tara Turner,

for a bindover or transfer proceeding. Because Turner was accused of a category one offense, the

only issue before the juvenile court was whether probable cause existed to believe that Turner

committed the charged offense. R.C. 2152.10(A)(1). Under this statutory framework, no other

issues, including Turner's possible amenability to rehabilitation or any other facts or issues in

mitigation, could be considered.

{¶ 68}   After the juvenile court judge heard the evidence adduced at the hearing, the court concluded that probable cause did, in fact, exist. This finding resulted in Turner's trial in the common pleas court's general division.

{¶ 69}   Five years after the juvenile court hearing, Turner now asserts that the juvenile court failed to comply with the applicable statutory notice requirements. R.C. 2152.12(G) requires that in a transfer proceeding, a juvenile court must provide notice to "parents, guardians or other custodians." Here, however, the record indicates that Turner's mother, Tara Turner, actually appeared with Turner during the trial court proceedings, signed court documents as Turner's parent or custodian, and, apparently, resided with Turner at her residence. Turner now argues that because he had been adjudicated a dependent child in a Franklin County Children Services case, and because in 2005 his maternal grandmother, Sylvia Watts, had been awarded his legal custody, Watts should have been provided notice of the transfer proceeding.

{¶ 70}   Although I recognize that Watts had been designated as Turner's legal custodian, it should also be recognized that Turner's mother retained residual parental rights because her rights had not been severed under an order of permanent custody or permanent surrender. I note also that the statute's notice requirement is written in the disjunctive; and the statute apparently recognizes that nontraditional custody arrangements are more prevalent in today's society.

{¶ 71}   Although the juvenile court may not have notified every person that it could have listed under the statutory notice provision, it did provide notice to Turner's mother; and moreover, it certainly complied with the spirit of the statute. Other courts have considered similar situations. For example, in *State v. Wallace* (May 20, 1992), Lorain App. No. 91CA005075, the defendant's grandfather "acted" as his guardian and appeared at court proceedings, despite any finding that the grandfather was actually the defendant's legal guardian

or custodian. The court did not find this action to be improper. See, also, *State v. Reynolds*, 10th App. Dist. No. 06AP-915, 2007-Ohio-4178. Furthermore, the seventeen-year-old Turner, his mother, and his attorney sat silently and did not raise this issue at any time during the trial court proceedings or during his direct appeal.

{¶ 72}  Accordingly, in light of the facts present in the case sub judice, I find it difficult to fault the juvenile court's action. Therefore, I would dismiss the petition.

**NOTICE**

**This document constitutes a final judgment entry and the time period for appeal commences from the date of filing with the clerk.**

**Pursuant to Civ.R. 58(B), the clerk is ORDERED to serve notice of the judgment and its date of entry upon the journal on all parties who are not in default for failure to appear.  Within three (3) days after journalization of this entry, the clerk is required to serve notice of the judgment pursuant to Civ.R. 5(B), and shall note the service in the appearance docket.**