Per Curiam.
*559 {¶ 1} The Fourth District Court of Appeals granted a writ of habeas corpus to appellee, Denelle Turner, ordering his immediate discharge from the Ross Correctional Institution. We reverse.
Background
{¶ 2} On August 13, 2008, the state filed a complaint charging Turner with murder by means of a firearm. Turner was 17 years old at the time of the offense, so the complaint was filed in the Juvenile Branch of the Domestic Relations Division of the Franklin County Court of Common Pleas. The state then filed a motion to transfer the matter to the general division of the common pleas court, to try Turner as an adult, which the juvenile court granted.
{¶ 3} Turner was convicted of murder and sentenced to prison. State v. Turner , Franklin C.P. No. 08CR-8193 (Oct. 6, 2010). The Tenth District Court of Appeals affirmed. State v. Turner , 10th Dist. Franklin No. 10AP-1051, 2011-Ohio-3705, 2011 WL 3210054. On January 8, 2015, he filed a petition for a writ of habeas corpus against Mark Hooks, warden of the Ross Correctional Institution, in the Fourth District Court of Appeals. He argued that the general division of the common pleas court lacked jurisdiction to try him because the juvenile court had failed to meet the requirements of R.C. 2152.12(G) before transferring his case.
{¶ 4} R.C. 2152.12(G) requires the juvenile court to give written notice of the time, place, and purpose of a hearing "to the child's parents, guardian, or other *560 custodian and to the child's counsel at least three days prior to the hearing." Prior to Turner's bindover hearing, the court served that notice upon his biological mother, Tara Turner. The juvenile court also gave notice to Derrick Wilford, as Turner's father, although his paternity has apparently not been established. See 2016-Ohio-3083, 55 N.E.3d 1133, ¶ 25. Regardless of Wilford's paternity status, service upon Tara Turner alone would be sufficient. R.C. 1.43(A) (the "singular includes the plural, and the plural includes the singular"); see also State v. Reynolds , 10th Dist. Franklin No. 06AP-915, 2007-Ohio-4178, 2007 WL 2325679, ¶ 11-12 (holding that interpreting the statute to require service on two parents in all circumstances would be illogical).
{¶ 5} However, in October 2005, the Franklin County Juvenile Court had awarded legal custody of Turner to his grandmother, Sylvia Watts. Although she remained legal custodian at the time of the transfer hearing, Watts was not given notice of the hearing. In his habeas petition, Turner argued that the failure to notify his legal custodian was a violation of R.C. 2152.12(G) and as a result, the common pleas court lacked jurisdiction over the matter.
{¶ 6} The court of appeals agreed that the failure to serve Watts prior to the bindover hearing was a jurisdictional defect. The court issued a writ of habeas corpus to compel *356 Turner's immediate release. 2016-Ohio-3083, 55 N.E.3d 1133, at ¶ 64.
{¶ 7} Hooks appealed. We stayed the appellate court's order pending review. 146 Ohio St.3d 1462, 2016-Ohio-4968, 54 N.E.3d 173.
Analysis
{¶ 8} We begin with Hooks's second proposition of law, because it is dispositive. As noted above, R.C. 2152.12(G) requires notice "to the child's parents, guardian, or other custodian." The statute is written in the disjunctive, such that notification is sufficient if sent to the parents or a guardian or other custodian. Therefore, Hooks contends, the juvenile court satisfied the statutory requirements by serving notice on Turner's biological mother, Tara Turner.
{¶ 9} The court of appeals disagreed, holding that "the legislature did not intend the term 'parents' to include a biological mother who has lost all but residual parenting rights and has been implicitly declared an unsuitable parent through a neglect or dependency adjudication." 2016-Ohio-3083, 55 N.E.3d 1133, at ¶ 46. It arrived at this interpretation by applying a canon of statutory construction. But there was no reason for the appellate court to resort to a canon of construction in the first place.
{¶ 10} When the language of a statute is ambiguous, we resort to the rules of construction to discern its meaning. Cline v. Ohio Bur. of Motor Vehicles , 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991) ("where a statute is found to be subject to *561 various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent"). We see nothing ambiguous in the language of R.C. 2152.12(G).
{¶ 11} The court of appeals held that R.C. 2152.12(G) was ambiguous because the term "parents" is undefined in the Revised Code and has multiple meanings. 2016-Ohio-3083, 55 N.E.3d 1133, at ¶ 37-38. The appellate court cited the following definition and usage notes for the word "parent":
"The lawful father or mother of someone. In ordinary usage, the term denotes more than responsibility for conception and birth. The term commonly includes (1) either the natural father or the natural mother of a child, (2) the adoptive father or the adoptive mother of a child, (3) the child's putative blood parent who has expressly acknowledged paternity, and (4) any individual or agency whose status as guardian has been established by judicial decree. In law, parental status based on any criterion may be terminated by judicial decree."
Id. at ¶ 37, quoting Black's Law Dictionary 1137 (7th Ed.1999). Viewing all these possibilities, the appellate court was unwilling to say that the statutory term had the single clear meaning of biological parent.
{¶ 12} However, there is nothing ambiguous about the meaning of the word "parents" in the statute. A statute is ambiguous " 'if a reasonable person can find different meanings in the [statute] and if good arguments can be made for either of two contrary positions.' " (Emphasis added). Sunset Estate Properties, L.L.C. v. Lodi , 9th Dist. Medina No. 12CA0023-M, 2013-Ohio-4973, 2013 WL 6021470, ¶ 20, quoting 4522 Kenny Rd., L.L.C., v. Columbus Bd. of Zoning Adjustment , 152 Ohio App.3d 526, 2003-Ohio-1891, 789 N.E.2d 246, ¶ 13 (10th Dist.) ;
*357 State ex rel. Bailey v. Madison , 10th Dist. Franklin No. 12AP-284, 2012-Ohio-4950, 2012 WL 5266320, ¶ 8. In this case, the court is not confronted with contrary or inconsistent interpretations: the statutory notice requirement was satisfied here by service upon a biological parent whose parental rights had not been fully terminated. And where, as here, "the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation." Cline at 96, 573 N.E.2d 77.
{¶ 13} Turner contends that interpreting R.C. 2152.12(G) in the manner Hooks suggests would lead to an absurd result, because it would deprive juvenile defendants of advice and guidance from a competent and fit parental figure at the hearings. It is not the role of this court to decide whether Tara Turner was the best choice to receive notice of Turner's hearings. That is a matter of policy for *562 the General Assembly to assess. It is sufficient to say that notice to her satisfied the statutory requirements.
{¶ 14} We agree with Hooks's second proposition of law and therefore reverse the judgment of the court of appeals. Because we conclude that the state met its notice obligations under R.C. 2152.12(G), it is unnecessary to reach Hooks's remaining propositions of law.
Judgment reversed.
O'Donnell, Kennedy, French, Fischer, and DeWine, JJ., concur.
O'Connor, C.J., concurs in judgment only, with an opinion.
O'Neill, J., dissents, with an opinion.
O'Connor, C.J., concurring in judgment only.
{¶ 15} R.C. 2152.12(G) requires that before the juvenile court conducts a hearing to transfer a child charged with delinquency to the adult division, the court "shall give notice in writing of the time, place, and purpose" of any hearing "to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing." The majority opinion holds that "the statutory notice requirement was satisfied here by service upon a biological parent whose parental rights had not been fully terminated." Majority opinion at ¶ 12. The majority opinion rejects the Fourth District Court of Appeals' conclusion that the statutory language-and, in particular, the word "parents"-is ambiguous.
{¶ 16} But statutory interpretation is not necessary here. Turner does not dispute that a parent was served with notice of his transfer hearing. Instead, his objection is a factual one. He argues that by serving his biological mother, who did not have legal custody, the notice was insufficient to satisfy R.C. 2152.12(G).
{¶ 17} R.C. 2152.12(G) is a notice statute, so the central question is whether notice was sufficient. Adequate notice-notice that satisfies one's due-process rights-is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Because the "notice required will vary with circumstances and conditions," a rigid formula is impossible. Walker v. Hutchinson , 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956).
{¶ 18} In R.C. 2152.12(G), the General Assembly provided options for who must receive the notice: "the child's parents, guardian, or other custodian." Notice to *358 any one or more of those persons may provide sufficient notice. Any one or more of those options may not. We may presume that the General Assembly *563 intended to comply with the Ohio and United States Constitutions when enacting R.C. 2152.12(G). See R.C. 1.47. And Turner has not raised a facial challenge to these methods of notice set forth in the statute. Thus, the question is whether, under the facts presented here, notice served on Turner's mother met the "reasonably calculated" standard.
{¶ 19} The majority opinion has strayed beyond this scope by determining that notice to a biological parent with only residual parental rights is sufficient under the plain language of the statute, without any further inquiry. The Fourth District similarly attempted to find a rule by holding that notice to Turner's mother was inadequate under the statute because Turner's mother no longer had a custodial role in her biological son's life. Both interpretations unnecessarily read into the statute a bright-line rule that invites due-process violations.
{¶ 20} In In re Foreclosure of Liens for Delinquent Taxes , 62 Ohio St.2d 333, 405 N.E.2d 1030 (1980), we considered a statute that required that notice of a foreclosure action be sent to an individual's "address." We recognized that "because due process is a flexible concept demanding more, or less, depending upon particular factual circumstances," imposing a single meaning on the word "address" in the notice statute was impossible. Id. at 337, 405 N.E.2d 1030. Instead, we stated that "the address used must be such that a taxpayer may be 'reasonably calculated' to be in receipt of the notice." Id.
{¶ 21} Similarly, here, imposing a single meaning on the word "parent" that could apply to satisfy the due-process considerations of a notice statute in every case is impossible. For example, it is not difficult to imagine a situation in which notice to a parent, including one with only residual rights, would not reasonably "apprise interested parties of the pendency of the action." Mullane , 339 U.S. at 314, 70 S.Ct. 652, 94 L.Ed. 865. Consider a circumstance in which a child's parent is mentally incapacitated or has been deemed incompetent. Or consider that a child's parent may be unavailable due to active military duty. Substitute ''legal custodian'' for ''parent'' and the same scenarios could be equally as ineffective at providing notice. In these situations, service on the parent or custodian may meet the literal directive of the statute, but could miss the mark of the reasonably calculated standard.
{¶ 22} Rather than engage in unnecessary statutory interpretation or a debate about the General Assembly's meaning of the word "parent," I would consider the factual circumstances here to determine whether notice to Turner's biological parent, rather than to his grandmother who was his legal custodian, met the reasonably calculated standard.
{¶ 23} Here, the juvenile complaint against Turner, dated August 13, 2008, listed Tara Turner as his "mother, guardian, or custodian." Two days later, on August 15, 2008, Turner's mother attended a preliminary hearing at which the *564 prosecutor presented her with a copy of the motion to relinquish jurisdiction that had been filed the day before. At the hearing, the judge confirmed on the record with the prosecutor and Turner's counsel their stipulation to service of that motion. The court continued the hearing on the motion to relinquish jurisdiction. The same day, Turner's mother signed an acknowledgement of a notice that the juvenile court would potentially relinquish jurisdiction, which was filed with the court. By entry dated August 15, 2008, the judge *359 memorialized the parties' stipulation to service of the motion to relinquish jurisdiction.
{¶ 24} On November 14, 2008, Turner's mother attended the juvenile-court hearing on the motion to relinquish jurisdiction. The prosecutor again noted, without objection from Turner's counsel, that Turner's mother was served with the motion to relinquish jurisdiction. The hearing was continued until November 17, 2008, and Turner's mother signed a waiver of notice of the hearing, which was filed with the court. Turner's mother also attended the hearing on November 17, 2008. The record is devoid of any evidence that Turner objected to the court providing notice to his mother at any time between August 15, 2008, and November 17, 2008, or that he raised an issue regarding his grandmother's custodial relationship.
{¶ 25} Under the circumstances, it appears that notice to Turner's mother was "reasonably calculated" to notify interested parties of the transfer hearing. Thus, I agree with the majority that notice here was sufficient under the statute. Because there is no need for this court to establish a bright-line rule through statutory interpretation, I concur in judgment only.
O'Neill, J., dissenting.
{¶ 26} Respectfully, I must dissent.
{¶ 27} In arriving at a predetermined conclusion, the majority fails to address what I believe is the most important fact in this and all bindover hearings: the transfer of a juvenile to an adult court dramatically changes the way that the juvenile is treated. There was no meaningful consideration of maturity or amenability to rehabilitation and no recognition that Denelle Turner was not an adult. Get the child convicted, sentenced, and incarcerated. He committed a murder, after all. But I see a problem. The child has a statutory right to have a parent or guardian at his side to make decisions and advise him with only his welfare in mind. That statutory right is bolstered by the constitutional right to due process-a right cast aside by the court today. And because of that due-process right, a literal interpretation of R.C. 2152.12(G), which required that the child's "parents, guardian, or other custodian" be notified of any hearing, is inadequate. Rather, this court should consider that a statute that would allow notice to be served on an adult who does not have legal custody of the juvenile *565 presents a glaring constitutional problem. And as the legislature has told us in R.C. 1.47(A), we should presume that the legislature intended a constitutional notice statute.
{¶ 28} The opinion concurring in judgment comes closer to the mark. I agree that we should presume that the legislature intended to comply with the United States and Ohio Constitutions when it enacted R.C. 2152.12(G). But, alas, I cannot agree that the due-process right to notice of a juvenile's transfer hearing permits service to just anyone claiming to be a parent who is skulking around the courthouse. In this context, due process "does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet." In re Gault , 387 U.S. 1, 33-34, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). One of the Supreme Court's primary considerations in extending traditional due-process protections to juvenile proceedings is that there is a possibility the state may take custody of the child and interfere with the custody of a parent. Id. at 17, 87 S.Ct. 1428. This is because a child's primary right is to have someone, whether a person or the state, take care of him. Id. at 17, 87 S.Ct. 1428, fn. 21. For that reason, a statute *360 requiring notice regarding a juvenile must at least require that the state inform the adult or adults with legal custody over the child in advance of the hearing in order to comply with constitutional protections.
{¶ 29} This case is instructive. In October 2005, the Franklin County Juvenile Court awarded legal custody of Turner to his grandmother, Sylvia Watts. This was a permanent-custody order, and the court did not provide for annual review. Although she remained Turner's legal custodian at the time of the transfer hearing, Watts was not given notice of the hearing. Notice was instead given to Turner's mother, Tara Turner, at the beginning of the hearing on the state's motion to relinquish jurisdiction to the adult court. Under no tortured expansion of the English language can that service be considered notice to any person who had the right or duty to protect, train, or discipline the child. See R.C. 2151.011(A)(21).
{¶ 30} The Franklin County Juvenile Court made a reasoned decision that Tara Turner was no longer capable of making any decisions concerning Turner. She had a long history of neglecting her children. Turner was placed in the state's custody in 2004 when he was 13 years old. Turner's mother lost custody of her children after she left them alone for periods of time. She had a history of alcohol or other drug abuse. And not only does the record show no attempt by Tara Turner to regain custody at any time, it shows that she failed to complete the case-plan objectives, failed to complete a drug-and-alcohol assessment, again disappeared for periods of time, and failed to consistently show up for scheduled *566 visits. Yet this is the person the majority has announced was capable of counseling Turner during the most important hearing of his life.
{¶ 31} I would hold that notice to a biological parent who no longer has legal custody is constitutionally insufficient under the only valid reading of R.C. 2152.12(G). Absent a proper bindover procedure, the juvenile court retained exclusive subject-matter jurisdiction in this case. State v. Wilson , 73 Ohio St.3d 40, 652 N.E.2d 196 (1995), paragraph one of the syllabus. Turner could not waive the juvenile court's exclusive subject-matter jurisdiction. Id. at paragraph two of the syllabus. That remains true notwithstanding the stipulation that Tara Turner received notice.
{¶ 32} For the foregoing reasons, I dissent.