[Cite as *State v. Brown*, 2018-Ohio-2267.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                                                    :

    Plaintiff-Appellant,     :          Case No.   17CA3603

    vs.                                                         :

LARRY E. BROWN II,                                    :          DECISION AND JUDGMENT
                              ENTRY
    Defendant-Appellee.                              :

_____

APPEARANCES:

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Assistant Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellant.

Timothy Young, Ohio Public Defender, and Nikki Trautman Baszynski, Assistant State Public Defender, Columbus, Ohio, for Appellee.[1]

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:6-6-18
ABELE, J.

{¶1} This is an appeal from a Ross County Common Pleas Court judgment that dismissed the indictment filed against Larry E. Brown II, defendant below and appellee herein. The State of Ohio, plaintiff below and appellant herein, assigns the following errors for review:

i.
ii.

_____
[1] Different counsel represented appellee during the trial court proceedings.

iii. FIRST ASSIGNMENT OF ERROR:

iv. "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT GRANTED THE APPELLEE'S MOTION TO DISMISS BY RETROACTIVELY APPLYING THE PROTECTIONS OF O.R.C. 2925.11(B)(2)(b) TO THIS OFFENDER, AS THE OFFENSE AT ISSUE OCCURRED APPROXIMATELY SIX (6) MONTHS PRIOR TO THE STATUTORY EFFECTIVE DATE OF THE PROTECTIONS AFFORDED OFFENDERS UNDER THE ABOVE LISTED STATUTE."

v. SECOND ASSIGNMENT OF ERROR:

vi. "THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S MOTION TO DISMISS BY FINDING THAT THE APPELLEE COMPLLIED [SIC] WITH O.R.C. 2925.11(B)(2)(b)(ii), BECAUSE NO EVIDENCE WAS OFFERED TO SHOW THE QUALIFIED INDIVIDUAL OBTAINED A SCREENING AND RECEIVED A REFERRAL FOR TREATMENT FROM A COMMUNITY ADDICTION SERVICES PROVIDER OR A PROPERLY CREDENTIALED ADDICTION TREATMENT PROFESSIONAL WITHIN THIRTY (30) DAYS OF HIS OVERDOSE."

vii. THIRD ASSIGNMENT OF ERROR:

viii. "THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S MOTION TO DISMISS BY FINDING THAT THE APPELLEE COMPLIED WITH O.R.C. 2925.11(B)(2)(b)(iii), BECAUSE THE QUALIFIED INDIVIDUAL DID NOT SUBMIT DOCUMENTATION TO THE PROSECUTING ATTORNEY TO VERIFY THAT HE SATISFIED THE REQUIREMENTS OF O.R.C. 2925.11(B)(2)(ii)."

{¶2} On May 27, 2016, a Ross County Grand Jury returned an indictment that charged appellant with fifth-degree felony cocaine-possession, in violation of R.C. 2925.11. In September 2016, the General Assembly amended the drug-possession statute, R.C. 2925.11, to generally grant immunity to a "qualified individual" who otherwise could be charged with a misdemeanor- or

fifth-degree felony drug-possession offense. For immunity to attach, the individual must satisfy the statutory requirements.

{¶3} On January 25, 2017, appellee filed a motion to dismiss the indictment and alleged that he is a qualified individual who is immune from prosecution under R.C. 2925.11(B)(2). In particular, appellee asserted that on (1) March 15, 2016, he required medical assistance due to a drug overdose; (2) law enforcement officers obtained cocaine from his person as a result of appellee receiving that medical assistance; (3) after emergency personnel revived him with Narcan, appellee consented to a search of his person; (4) during the search, law enforcement officers discovered a bag that contained a white powdery substance that later testing revealed to be cocaine; and (5) within thirty days of needing medical assistance for his drug-overdose, he sought and obtained a screening and received a treatment-referral. Appellee alleged that on March 29, 2016, he entered a drug-treatment program through Pike County Recovery Council (PCRC).

{¶4} Appellee thus contended that he fulfilled the R.C. 2925.11(B)(2) requirements: (1) law enforcement officers obtained cocaine as a result of appellee experiencing an overdose and needing medical assistance; and (2) within thirty days of receiving medical assistance for his overdose, he sought and obtained a screening and received a treatment-referral. Appellee asserted that he is, therefore, immune under R.C. 2925.11(B)(2)(b).

{¶5} In support of his motion, appellee attached a document from SelfRefind that states that on August 29, 2016, appellee entered a drug-addiction treatment program and that he continues to participate in the program. Appellee also included a document from PCRC that lists appellee's dates of service. Appellee's first date of service was December 15, 2015, but the document reflects no other services provided to appellee until March 29, 2016. The document

contains codes for the activities and procedures provided to appellee, but it does not reveal what the codes mean.

{¶6} On March 1, 2017, the trial court held a hearing to consider appellee's motion to dismiss. At the hearing, the parties stipulated that on December 15, 2015, appellee received an assessment from PCRC, and that when he returned on March 29, 2016, he received treatment. The parties further stipulated that in August 2016, appellee obtained an assessment through SelfRefind and he has been in treatment since that time.

{¶7} The trial court asked the parties whether R.C. 2925.11(B)(2)(b) applies when an individual overdoses before the effective date of the statute, as appellee did. The prosecutor responded:

    i. I think that it does in this particular case because when you look at (B)(2)(b) of 2925.11, it says that a qualified individual shall not be arrested, charged, prosecuted, or convicted or penalized. So I think at least those last two or the last three sections apply to him being convicted or penalized, even though the act itself had occurred prior to the effective date of the [statute].

The prosecutor asserted, however, that appellee did not satisfy the conditions listed in the statute to be entitled to immunity. The prosecutor agreed that appellee met the first condition, i.e., that the cocaine was obtained as a result of receiving medical assistance. However, the prosecutor did not agree that appellee met the second condition, i.e., that he sought and obtained a screening and received a treatment-referral within thirty days of receiving medical assistance. The prosecutor asserted that appellee received "an assessment" three months before his overdose and then "appeared for treatment" two weeks after his overdose. The prosecutor contended that receiving an assessment three months before an overdose and entering a treatment program within thirty days after the overdose does not satisfy the second condition listed in the statute. The prosecutor

asserted that the statute instead requires the individual to receive an assessment within thirty days after seeking or obtaining medical assistance, and that the statute does not include conduct that occurred before the individual seeks or obtains medical assistance.

{¶8} Appellee argued that he "went above and beyond what was required of him by the statute." He has undergone treatment, and he has followed-up with that treatment. Appellee recognized that PCRC completed an assessment three months before his overdose. He further asserted, however, that two weeks after his overdose, he returned to PCRC, "sign[ed] up, [obtained] a treatment plan and [went] to treatment." Appellee contended that he "clearly had some type of plan formed once he re-establishe[d his] relationship" with PCRC. Appellee alleged that his re-entry three months after his initial assessment sufficiently illustrates that PCRC screened him and that his subsequent treatment shows that PCRC referred him for treatment. Appellee also claimed that even though he completed an assessment three months before his overdose, he returned to PCRC within thirty days of his overdose and that his return to treatment shows that he sought and obtained a screening and received a treatment-referral.

{¶9} The trial court noted that the statute does not define the type of screening or assessment an individual must undergo. The court believed, however, that an individual "receives an assessment every time he goes for counseling, because they assess where he is in his addiction and they assess what they need to do at that hearing or at that meeting, and what's going to happen to him down the road." The court further believed that it would be "absurd" to read the statute so as to give immunity to an individual who seeks and obtains a screening and treatment-referral and who does not actually engage in a treatment program, but to deny immunity to an individual who

obtained a screening and treatment-referral before the overdose that resulted in medical assistance and then actually engages in treatment after the overdose.

{¶10} The trial court thus granted appellee's motion to dismiss the indictment. The court noted that, even though appellee did not undergo an evaluation within thirty days, he had received one earlier. The court further found "that as part of ongoing treatment being received an assessment would be completed within the specified time." This appeal followed.

I

{¶11} Appellant's three assignments of error all challenge the trial court's decision to grant appellee's motion to dismiss the indictment. For ease of discussion, we first set forth the applicable standard of review.

{¶12} Generally, appellate courts conduct a de novo review of a trial court's decision regarding a motion to dismiss an indictment. *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶5 (4th Dist.); *State v. Kirk*, 8th Dist. Cuyahoga No. 104866, 2016-Ohio-8296, 2016 WL 7496605, ¶4; *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶20 ("Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy."); *State v. Workman*, 4th Dist. Athens No. 14CA25, 2015-Ohio-4483, 2015 WL 6549290, ¶9. Accordingly, an appellate court does not defer to a trial court's decision, but instead independently determines whether the trial court's decision is legally correct. *Wheatley* at ¶5.

II

{¶13} In its first assignment of error, appellant asserts that the trial court erred by granting appellee's motion to dismiss the indictment. Specifically, appellant contends that the trial court

erred by determining that R.C. 2925.11(B)(2)(b) applies retroactively so as to render appellee immune from prosecution for a minor drug-possession offense. Appellant claims that the General Assembly did not expressly indicate that the statute applies retroactively, and thus, the statute applies prospectively only.

{¶14} Appellee points out, however, that during the trial court proceedings, appellant expressly agreed that R.C. 2925.11(B)(2)(b) applies retroactively. Appellee thus contends that appellant forfeited the right to argue that R.C. 2925.11(B)(2)(b) applies prospectively only, or alternatively, that appellant invited any error that the trial court may have committed by applying the statute to appellee's situation.

{¶15} We agree with appellee that appellant invited any error that the trial court may have committed by applying R.C. 2925.11(B)(2)(b). Our review of the record reveals that during the hearing, the court specifically questioned the parties whether the statute applied to appellee, who had overdosed and entered treatment before the effective date of the statute. Appellant asserted that the statute indeed applies to appellee and did not give any indication that it believed the statute could apply prospectively only. Under these circumstances, we believe that appellant invited any error that may have occurred. *See State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002–Ohio–4849, 775 N.E.2d 517, ¶27 ("Under [the invited-error] doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the court to make").

{¶16} We additionally recognize that appellant argues that the trial court plainly erred by applying the statute to appellee. The invited-error doctrine is not, however, rendered inapplicable when a party claims plain error:

> i. While invocation of the plain error doctrine is often justified in order to promote public confidence in the judicial process, "[it is doubtful

> that] the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to 'crucial matters.' In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice."

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121–122, 679 N.E.2d 1099 (1997), quoting *Montalvo v. Lapez*, 77 Hawaii 282, 305, 884 P.2d 345, 368 (1994)(Nakayama, J., concurring in part and dissenting in part); *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010–Ohio–3286, 934 N.E.2d 920, ¶10 (stating that even plain error is waived when error is invited). Thus, even if the trial court arguably erred by applying R.C. 2925.11(B)(2)(b), appellant cannot take advantage of a plain error that it invited.[2]

**{¶17}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

### III

**{¶18}** Appellant's second and third assignments of error challenge the trial court's finding that appellee's conduct following his overdose satisfied the R.C. 2925.11(B)(2)(b)(ii) and (iii) requirements. For ease of discussion, we consider the two assignments of error together.

**{¶19}** In its second assignment of error, appellant contends that appellee did not present any evidence that he obtained a screening and received a treatment-referral within thirty days of receiving medical attention for his overdose. Instead, appellant asserts that the evidence shows that appellee received a screening and treatment-referral more than three months before his

---

[2] Assuming, arguendo, appellant had not invited any error, we recently determined that R.C. 2925.11(B)(2)(b) may apply to individuals who committed the minor drug possession offense before the amendment's effective date. *State v. Simmons*, 4th Dist. Washington No. 17CA16, 2018-Ohio------.

ROSS, 17CA3603

overdose. Appellant thus claims that appellee's pre-overdose screening and treatment-referral do not satisfy the plain language of the statute.

{¶20} Appellant recognizes that appellee entered treatment within thirty days of his overdose. Appellant further charges, however, that obtaining treatment within thirty days of the overdose without also presenting evidence that the individual received a screening and treatment-referral within that same time period does not satisfy the plain language of the statute.

{¶21} Appellee asserts that the documents he presented permitted the trial court to "reasonably infer[]" that appellant received a screening and treatment-referral. Appellee further contends that the trial court interpreted the "screening" requirement so as to avoid an "absurd" result: an individual who actually engages in treatment following an overdose would not be entitled to immunity under R.C. 2925.11(B)(2)(b), but an individual who seeks and obtains a screening and treatment-referral without engaging in treatment would be entitled to immunity. Appellee argues that the trial court had "discretion to interpret the 'screening' and 'referral for treatment' condition broadly so that evidence of a more onerous task–actual participation in treatment– satisfied it."

{¶22} In its third assignment of error, appellant contends that the trial court erred by concluding that appellee satisfied R.C. 2925.11(B)(2)(b)(iii). Appellant asserts that appellee did not present documentation to verify that he obtained a screening or treatment-referral within thirty days of his overdose. Instead, appellant argues, appellee submitted a document that shows he obtained a treatment-referral three months before his overdose.

{¶23} Appellee contends that appellant's failure to request that he produce written documentation to show that he sought and obtained a screening and received a treatment-referral

ROSS, 17CA3603

means that the trial court could make reasonable inferences from the evidence appellee presented with his motion to dismiss.

{¶24} After appellee's indictment, the General Assembly amended R.C. 2925.11. The amendment added R.C. 2925.11(B)(2)(b), which grants immunity to "a qualified individual." *See* R.C. 2925.11(B)(2)(f) (describing R.C. 2925.11(B)(2)(b) as granting immunity). More specifically, the statute provides:

{¶25} [A] qualified individual shall not be arrested, charged, prosecuted, convicted, or penalized pursuant to this chapter for a minor drug possession offense if all of the following apply:

> (I)  The evidence of the obtaining, possession, or use of the controlled substance or controlled substance analog that would be the basis of the offense was obtained as a result of the qualified individual seeking the medical assistance or experiencing an overdose and needing medical assistance.
> ii.   (ii) Subject to division (B)(2)(g) of this section, within thirty days after seeking or obtaining the medical assistance, the qualified individual seeks and obtains a screening and receives a referral for treatment from a community addiction services provider or a properly credentialed addiction treatment professional.
> iii.  (iii) Subject to division (B)(2)(g) of this section, the qualified individual who obtains a screening and receives a referral for treatment under division (B)(2)(b)(ii) of this section, upon the request of any prosecuting attorney, submits documentation to the prosecuting attorney that verifies that the qualified individual satisfied the requirements of that division. The documentation shall be limited to the date and time of the screening obtained and referral received.

{¶26} A "'[q]ualified individual' means a person who is not on community control or post-release control and is * * * a person who experiences a drug overdose and who seeks medical assistance for that overdose." R.C. 2925.11(B)(2)(a)(viii). A "'[m]inor drug possession offense'

ROSS, 17CA3603

means a violation of this section that is a misdemeanor or a felony of the fifth degree." R.C. 2925.11(B)(2)(a)(iv).

{¶27} In the case sub judice, appellant asserts that the trial court erred by determining that appellee (1) within thirty days after he received medical treatment for his overdose, sought and obtained "a screening and receive[d] a referral for treatment," and (2) "submit[ted] documentation to the prosecuting attorney that verifies that [appellee] satisfied the requirements of [R.C. 2925.11(B)(2)(ii)]." Appellant claims that appellee's re-entry into a treatment program after being assessed three months earlier does not satisfy the "screening" requirement.

{¶28} Appellee, on the other hand, argues that the trial court applied an appropriate interpretation of the term "screening" and found that appellant's re-entry into treatment on March 29, 2016, would have involved additional screening and treatment-referral. Resolving the parties' dispute requires us to consider the meaning of the terms "screening" and "referral to treatment" as used in R.C. 2925.11(B)(2)(b).

{¶29} A court that is ascertaining the meaning of a statute first must "consider the 'plain meaning of the statutory language.'" *State v. D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, ¶10, quoting *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶52. "If that language is 'unambiguous and definite,' we apply it 'in a manner consistent with the plain meaning of the statutory language.'" *Id.*, quoting *State v. Lowe,* 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. Accordingly, a court's first step when considering the meaning of a statute "is always to determine whether the statute is 'plain and unambiguous.'" *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, quoting *State v. Hurd*, 89 Ohio St.3d 616, 618, 734 N.E.2d 365 (2000); *see also State ex rel.*

*Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶15, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus (stating that if words used in statute "'be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation'"). "'If [the statute] is not ambiguous, then we need not interpret it; we must simply apply it.'" *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶11, quoting *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶13. When the language used in a statute "'is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said.'" *Id.*, quoting *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Additionally, courts must "give effect only to the words the legislature used, making neither additions to, nor deletions from, the statutory language." *Id.*, citing *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶19. Furthermore, "'[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.'" *State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶18, quoting *Morning View Care Ctr.–Fulton v. Ohio Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶36 (10th Dist.).

**{¶30}** Consequently, when interpreting a statute, courts first look to the text of the rule, "reading words and phrases in context and construing them according to the rules of grammar and common usage." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶21. When, however, a legislative "definition is available, we construe the words

of the statute accordingly." *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶4, citing R.C. 1.42; *accord Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶25. Additionally, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42; *accord State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 2017-Ohio-8348, 2017 WL 4990584, ¶14; *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶26; *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, 2016 WL 3216241, ¶21. Terms that are not statutorily-defined or that have not acquired a technical or particular meaning "are accorded their common, everyday meaning." *Stewart* at ¶25, citing R.C. 1.42.

{¶31} In general, a statute is ambiguous when the language "is 'capable of bearing more than one meaning.'" *Jacobson* at ¶8, quoting *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶16; *see Dana Corp. v. Testa, Tax Commr.*, — Ohio St.3d —, 2018-Ohio-1561, — N.E.3d. —, ¶23, quoting *Pittsburgh Steel Co. v. Bowers*, 173 Ohio St. 74, 77, 179 N.E.2d 915 (1962) (explaining that ambiguity may result not only from "'the indefiniteness of the meaning of a word or phrase,'" but also "from a word or phrase that by itself is 'perfectly clear in its meaning' but that becomes 'clouded with obscurity when considered in relation to other words in a statement containing the word or phrase'"). A court that is reviewing a statute for ambiguity should direct its "'attention * * * beyond single phrases, and * * * should consider, in proper context, all words used by the General Assembly in drafting [the relevant statute] with a view to its place in the overall [statutory] scheme.'" *Gonzales* at ¶5, quoting *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶19.

ROSS, 17CA3603

"When the language of a statute is ambiguous, we resort to the rules of construction to discern its meaning." *Turner v. Hooks*, — Ohio St.3d —, 2018-Ohio-556, — N.E.3d —, ¶10, citing *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991). "Without 'an initial finding' of ambiguity, 'inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate.'" *Jacobson* at ¶8, quoting *Dunbar* at ¶16.

**{¶32}** In the case sub judice, the General Assembly did not define the terms "screening" or "referral to treatment." We therefore "first consider the dictionary definition of the term[s]." *Stewart* at ¶26.

**{¶33}** The dictionary definition of "screening" does not yield a satisfactory meaning of the word as used within R.C. 2925.11(B)(2)(b)(ii). Merriam-Webster's Dictionary offers the following four definitions of "screening": (1) "the act or process of one that screens"; (2) "material (such as waste or fine coal) separated out by means of a screen"; (3) "metal or plastic mesh (as for window screens)"; and (4) "a showing of a motion picture." https://www.merriam-webster.com/dictionary/screening. The term "screen" includes "a system for examining and separating into different groups." https://www.merriam-webster.com/dictionary/screens. Reading these definitions together suggests that "screening," as used in R.C. 2925.11(B)(2)(b)(ii), could mean the act or process of examining and separating into different groups. We do not believe, however, that this definition fully explains the meaning of "screening" as used in R.C. 2925.11(B)(2)(b)(ii). Instead, we believe that the word "screening," in addition to the phrase "referral to treatment," is a term of art commonly used in the field of substance abuse treatment services. We therefore believe that the terms "screening" and "referral to treatment" as used in

R.C. 2925.11(B)(2)(b) have acquired technical or particular meanings that we should employ to ascertain the meaning of the statute.

{¶34} The United States Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Center for Substance Abuse Treatment, has issued several publications regarding substance abuse that offer insight into the meaning of the terms "screening" and "referral to treatment" as used in R.C. 2925.11(B)(2)(b)(ii). As used in the field of substance abuse services, "screening" generally means

> a process of identifying patients with possible substance misuse or abuse problems and determining the appropriate course of future action for these individuals. The screening process does not exactly identify what kind of problem a person might have or how serious it might be; screening simply determines whether a problem exists or whether further assessment is needed.

Systems-Level Implementation of Screening, Brief Intervention, and Referral to Treatment, Technical Assistance Publication (TAP) Series 33, HHS Publication No. (SMA) 13-4741, Rockville, MD: Substance Abuse and Mental Health Services Administration (2013), 8 ("TAP 33"), available at https://store.samhsa.gov/shin/content//SMA13-4741/TAP33.pdf.

{¶35} While screening aims to identify individuals with possible substance abuse issues,

> [t]he primary goals of referral to treatment (RT) are to identify an appropriate treatment program and to facilitate engagement of the patient in treatment. RT can be a complex process involving coordination across different types of services. It requires a proactive and collaborative effort between SBIRT [Screening, Brief Intervention, and Referral to Treatment] providers and those providing specialty treatment to ensure that a patient, once referred, has access to and engages in the appropriate level of care. To facilitate patient engagement, SBIRT providers may use motivational enhancement techniques to help patients with any ambivalence toward treatment, provide transportation to intake appointments, follow up with patients after an appointment, and maintain contact with the specialty treatment provider.

*Id.* at 9.

ROSS, 17CA3603

{¶36} In the case at bar, the parties also appear to have used the term "assessment" synonymously with "screening." "Assessment" generally means

> [a] process for defining the nature of a problem and developing specific treatment recommendations for addressing the problem. A basic assessment consists of gathering key information and engaging in a process with the client that enables the counselor to understand the client's readiness for change, problem areas, any diagnosis(es), disabilities, and strengths. The assessment process typically requires trained professionals to administer and interpret results, based on their experience and training.

Center for Substance Abuse Treatment. Substance Abuse Treatment for Adults in the Criminal Justice System. Treatment Improvement Protocol (TIP) Series 44. HHS Publication No. (SMA) 13-4056. Rockville, MD: Substance Abuse and Mental Health Services Administration (2005), 8 ("TIP 44"), available at https://store.samhsa.gov/shin/content//SMA13-4056/SMA13-4056.pdf.

{¶37} Thus,

> [s]creening differs from assessment in the following ways:
>   i. Screening is a process for evaluating the possible presence of a particular problem. The outcome is normally a simple yes or no.
>   ii. Assessment is a process for defining the nature of that problem, determining a diagnosis, and developing specific treatment recommendations for addressing the problem or diagnosis.

of Women, Treatment Improvement Protocol (TIP) Series, No. 51 Center for Substance Abuse Treatment, Substance Abuse and Mental Health Services Administration (2009), 58 ("TIP 51"), available at https://www.ncbi.nlm.nih.gov /books/NBK83252/pdf/Bookshelf_NBK83252.pdf/.

{¶38} Furthermore, "[s]creening and assessment are not single events but continuous processes that can be repeated by a variety of professionals in a variety of settings." TIP 44 at 14. Thus, "[s]creening can be repeated at intervals, as needed." TAP 33 at 10. Likewise,

"[a]ssessment should be a fluid process throughout treatment. It is not a once-and-done event. Considering the complexity of withdrawal and the potential influence of alcohol and drugs on physical and psychological functioning, it is very important to reevaluate as the client engages into recovery." TIP 51 at 75. "Another key reason for conducting multiple screenings and assessments over time is that previous information obtained may become outdated and may not include recent events that are relevant to treatment, such as relapse episodes, undetected mental disorders, or domestic violence." TIP 44 at 16.

{¶39} After considering the foregoing definitions, we believe that the term "screening" as used in R.C. 2925.11(B)(2)(b) means the "process of identifying patients with possible substance misuse or abuse problems and determining the appropriate course of future action for these individuals." The phrase "referral to treatment" means the process that identifies an appropriate treatment program and facilitates patient engagement. Therefore, we believe that the plain language of the statute requires a qualified individual to seek and undergo, within thirty days of seeking medical assistance for a drug overdose, a "process" to identify possible substance misuse or abuse problems and to determine the appropriate course of future action. In addition, the individual must receive a treatment-referral, which involves identifying an appropriate treatment program and facilitating patient engagement. Although the parties appear to use the terms "screening" and "assessment" interchangeably, we point out that the published literature indicates that the terms are not synonymous.

{¶40} Having defined the terms used in R.C. 2925.11(B)(2)(b)(ii), we now can determine whether the trial court correctly concluded that appellant sought and obtained a screening and treatment-referral within the thirty-day window. The evidence appellee submitted shows that he

received services at PCRC on December 15, 2015, and that his next service did not occur until March 29, 2016. The documentary evidence does not reveal what type of services appellee received during his visits to PCRC. The parties stipulated, however, that appellee received an "assessment" on December 15, 2015, and that he began a treatment program on March 29, 2016. The trial court found it logical to conclude that when appellee began the treatment program on March 29, 2016, PCRC would have administered a screening and would have referred appellee to treatment; otherwise, PCRC would not have admitted appellee into a treatment program. The trial court believed that given the three-month interval between appellee's December 2015 "assessment" and his March 2016 treatment, PCRC likely re-screened and re-referred appellee to treatment, assuming that is what PCRC had, in fact, done in December 2015.

{¶41} The technical meanings of "screening" and "referral to treatment" appear to support the trial court's conclusions. The literature indicates that a person may undergo more than one screening to account for lapses in time, relapses, overdoses, etc. This is precisely what happened to appellee. He visited PCRC in December 2015. Three months elapsed without any evidence that appellee engaged in treatment. He then overdosed. Two weeks later, he returned to PCRC. Given this set of circumstances, we do not find the trial court's conclusion that appellee satisfied the screening and treatment-referral requirements to be unreasonable or contrary to the plain language of the statute,[3] especially when appellant never requested appellee to submit written documentation to verify the screening and treatment-referral requirements.[4]

---

[3] The parties have not fully developed arguments concerning the standard of review that appellate courts should apply to evaluate a trial court's screening and treatment-referral findings. We therefore do not address the issue at this time.

[4] We observe that the trial court also applied the "absurd-result" rule.

**[Cite as *State v. Brown*, 2018-Ohio-2267.]**

---

"The absurd result principle in statutory interpretation provides an exception to the rule that a statute should be interpreted according to its plain meaning." (Emphasis added.) Dougherty, Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation, 44 Am.U.L.Rev. 127 (1994). It is premised on a guiding principle of statutory construction: that when the General Assembly enacts a statute, it does not intend to produce an absurd result. See R.C. 1.47(C).

*State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶22.

The absurd-result exception to the plain-meaning rule of construction "entails the imputation of legislative intent based on the judge's perception" and "vastly expands the [c]ourt's authority." Manning, The Absurdity Doctrine, 116 Harv.L.Rev. 2387, 2476 (2003). Therefore, all courts should exercise restraint in the application of the absurd-result exception, employing it in only those cases in which the plain language of a statute results in an obviously unintended result. Scalia & Garner, Reading Law: The Interpretation of Legal Texts 239 (2012) ("The doctrine of absurdity is meant to correct obvious unintended dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense").

*Id.* at ¶26 (2017).

In the case sub judice, we do not believe that the plain language of the statute leads to an obviously unintended result. We therefore need not consider the absurd-results rule.

{¶42} With respect to appellant's assertion that the trial court improperly concluded that appellee complied with R.C. 2925.11(B)(2)(b)(iii)'s requirement to submit documentation verifying the screening and treatment-referral requirements, the statute plainly requires the prosecuting attorney to make a request for verification. In the case sub judice, the trial court specifically found that appellant never made any request. Thus, according to the plain meaning of the statute, appellee did not have a duty to submit documentation verifying the requirements.

{¶43} Finally, we find it appropriate to note:

> i. Because our role as members of the judiciary is not "'to establish legislative policies or to second-guess the General Assembly's policy choices,'" *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212, or to declare that the General Assembly by way of inadvertence or inattention made a slip of the pen in an attempt to rewrite the statute in a manner that is pleasing to us, we must adhere to the plain language of the statute. If after reflection on our decision, the General Assembly finds that its original intention was not accomplished in the words that it chose, then it, and it alone, has the constitutional authority to amend the statute to conform to its intention.

*State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶40.

{¶44} Accordingly, based upon the foregoing reasons, we overrule appellant's second and third assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.